May it please the Court, I'm David Jordan. I represent the appellant Winecup Gamble. I'd like to reserve three minutes for rebuttal. Okay. Your Honors, this appeal turns on the plain meaning of two common words, anything and all. If I may, let me put that issue in factual context. In 2016, Winecup Gamble, the appellant, and Gordon Ranch, the appellee, entered into an agreement by which Winecup Gamble would sell the Winecup Gamble Ranch to Gordon Ranch. The ranch is enormous. It comprises 250,000 acres of fee land and another half a million acres of grazing right land. The sale was scheduled to close in January of 2017, but in December, Gordon Ranch asked for a three-month extension of the closing. Recognizing that a delay in the closing would entail certain risks, the parties negotiated an amendment to the purchase agreement. It granted an extension of the closing until April for three months, but required additional earnest money and provided as follows. Notwithstanding anything to the contrary in the agreement, the earnest money as increased by the additional earnest money shall be nonrefundable under all circumstances other than a default by seller. So, do you contend that the amendment changed that scheme, did not change that scheme, or is ambiguous? Well, I contend that it is unambiguous and that it did change the scheme of the original purchase agreement. So, you're saying that the anything and the all is unambiguous? I am. And, as I understand it, the other party has also said it's unambiguous, but it goes a different way than you do. Yes, that's exactly correct. And the district court says it's unambiguous and they went a different way than you did. In fact. All of them claiming unambiguous. Yes.  To what? It's ambiguous. Ambiguous? Well, Your Honor, I. It seems to me that, it seems to me that, and I'm just following up on my colleague's question. If this is ambiguous, then at that point it seems to me that's what the district court did. District court said this is ambiguous and then went through, if you will, other information in the file that they had and looked at it. And then after reviewing all of that information, then came up with what they thought was the reasonable result based on what was there. But, what I'm going to ask you is, what if this is ambiguous? Shouldn't I send this back to the district court to have a trial? Yes. About what this language says? I do not disagree. If Your Honors believe that the language is ambiguous, then it's subject to interpretation by parole evidence under Nevada contract law. But I do stand by the proposition that I asserted, that the appellee asserted, and that the district court also announced. I understand where you are because that's why I recited it to you. Let me go further. Supposing that I think it's ambiguous, that it isn't ambiguous, that it's clear and unambiguous language, does Nevada code outlaw such provision? It does not outlaw such provision. Why? Doesn't it suggest that in this kind of a situation, that these kind of damages are not allowed under Nevada law? Because they are, well I don't want to say the bad phrase, but that they are damages that result in a penalty? Yes. So there is a body of case law in Nevada, as there is I think in almost every state, that says that liquid damages are presumed to be, liquidated damages are presumed to be enforceable, but if they are so disproportionate, they can be deemed a penalty, and penalties are unenforceable. And so, and even in that situation, one would, given the Nevada law, remand to let the district court determine if they are disproportionate or not. Well, I think you don't need to do so in this case because there is Nevada Supreme Court law which I think is on point. It's the Mason case. Yes. And the Mason case stands for this proposition. When you're dealing with a real estate purchase contract, it's virtually impossible to estimate what the actual damages are. So the court in Mason set up this test. Instead of trying to figure out what the actual damages might be, we will compare the earnest money, the liquidated damages in this case, to the purchase price. And if that earnest money to purchase price comparison is not disproportionate, then it's not a penalty. Is that a question of law? I think there are no disputed facts on the point. Well, but just a minute. Is that really a question of law or a question of fact? The reason I ask you that question is this. That in general, before we will allow those types of damages in a contract, we would suggest that those types of damages have to have some reasonable applicability in this particular case, that they would be hard to measure, that it's a reasonable estimate, and that we haven't talked about it any place else in the agreement, as I understand Nevada law. So it seems to me that if I'm going to apply those provisions to this particular question, I ought to send that back for a hearing as to whether that's really appropriate. Well, here's what I would suggest that Mason teaches us. It is not a pure question of law, but the facts are undisputed because we know the elements of the Mason test. We know what the earnest money is. We know what the total purchase price is. Therefore, we know the percentage of the total purchase price that the earnest money represents. And in this case, it's less than 8%. In Mason, the Court said 10% is not undue. It's not disproportionate. It's not a penalty. And then the Court was at pains to go through cases from all over the country that ranged from 7% to 16% where it had been held that that's not disproportionate. So if Mason says 10% is not disproportionate in a purchase of real estate context, then less than 8% is not disproportionate. Factual issues, but undisputed. And then Nevada law would allow you under a plain and unambiguous interpretation of the contract to keep the money. Yes, sir. So let me ask you about the attorney's fees. Okay. So supposedly there's an attorney's fees to the person that wins. And I think you're both saying you should just win right here, we don't need to go back, and you're both giving your theories of why. And the judge said, well, I'm not going to give either of you attorney's fees, right? He did. Let's assume that the judge understands that the prevailing party does get attorney's fees, but just says, you know what, you all have just made a mess of this, all right, and you wasted all our time. And if either of you wins here, you know, it's okay, I'm going to let you win, but don't get greedy here. And you've wasted all our time, and you could have written a better contract, and we had to make all these arguments, I had to stand on my head, I had to face to the west, I had to do this, that, and the other, and look at the damages, and you're both sophisticated parties, you could have done better. I'm not going to give either of you attorney's fees besides this. If you get the money back, you should be happy and just hush. So does the district court have the discretion to deny attorney's fees in this litigation, or is it required to order them just because there's an attorney's fees? I don't think the district court has discretion to ignore the contract provision in Section 19 of the original purchase agreement that attorney's fees go to the prevailing party. So then you just give them $10 because that's all you really deserve, because a lot of this is due to your own bad drafting that all of you did and wasted all our time? We're not sure why the district court didn't conclude that Gordon Ranch was the prevailing party. Well, I think I'm a trial judge. I was a trial judge, and I can see that how both of you as sophisticated parties could be kind of annoying and that you couldn't, you know, couldn't you have done a better, you draft, you know, you have all this money, it's a huge deal, can't you do a clearer job of all of this? I understand. I don't think that's a reason to ignore a contract provision, and that's not our argument. So it's got to be all or nothing? The only way that you both get, you know, whoever wins gets the full amount and gets all their attorney's fees to litigate this? Well, no, they get their reasonable attorney's fees, and it may be that Judge Jones had this in mind. The argument of Gordon Ranch below was that they were entitled to a refund of the purchase money because, according to them, Wine Cup Gamble had defaulted. The judge rejected that. Judge Jones said no one has defaulted here. This is just a casualty event. It's an act of nature. Are we bound by that? No one has challenged it before you. I don't think that issue is up before you. But it's all about what the contract says, right? Yes, yes. No one has preserved an issue surrounding that finding, that conclusion. I would say this. It seems to me in both of your arguments there's a little rough justice. I think Judge Jones is applying a little rough justice here. My argument about attorney's fees is a different one. My argument is if you want attorney's fees, you must ask the district court specifically for them by motion. That's what Rule 54D says. It says you must file a motion seeking attorney's fees. And there's a body of case law repeatedly in this circuit that says you just want to win here. You want the money, but you're not asking for attorney's fees. Not here. I'm not entitled to ask for attorney's fees here. If you rule in my favor that the notwithstanding provision of the amendment governs, that that's plain and unambiguous, then the whole question of whether Gordon Ranch gets attorney's fees is moot. If then the district. Then it goes back to the district court, and then you go in and ask for attorney's fees. I will, in fact. I will, in fact. That's what I thought. You know, there's also, you know, sometimes you kind of say to yourself, so you're going to want to probably save the rest of your time for rebuttal. But it's like if you both argue for, you know, if you both argue for 13 or 15 minutes how it's unambiguous, and then it's almost like if you can both make credible arguments to that point, is it maybe not ambiguous? I don't think so. I really do believe that the district court went far afield here. When you have a provision that says, notwithstanding anything to the contrary, and the district court says, no, you have to call out the provision that you're meaning to amend by number, that's just wrong. I understand your argument about wrong. But it really seems a little uneasy, reading this amendment, that what it really was intended to do was apply to this provision you think it amended and applied to. It does say with notwithstanding. It does say all. But this is a pretty important provision. And Nevada may say 10%, and I've understood that argument better. But I'm saying to myself, and I think the district court was really saying, you know, that's pretty hard for me to say that that is exactly what they meant. The language says, but I think it's ambiguous. Too bad the district court didn't say that. No, they didn't. It would have been a lot easier to understand the district court's decision. But don't you think it would be a lot easier if we'd say, okay, that's an ambiguous agreement. Send it back, and let's have a trial and find out what the parties really meant. And then you can make your decision and make the attorney's fees question. Why can't we do that? Well, of course you can, but I think it would be a... Of course we can. Why shouldn't we? Because it would be a disservice to contract law and contract lawyers. Well, but just a minute. The only way that I would say that it would be a disservice is if I can read without question that the language you have in front of you, of me, is plain, clear, and unambiguous. If I can't find that, then at that point I say ambiguous. Can I make that determination on appeal without anybody else telling me I can? You absolutely can. That's what I thought. You can read the plain language. So therefore I don't have to have it raised. I can make this on appeal myself. It's de novo review, and therefore I can do this, right? You can. You shouldn't. do exactly what the district court did, though the district court didn't say that. It did not, and what I mean when I say it's a disservice to contract law and to contract lawyers, the concept of using a notwithstanding anything in the agreement to the contrary is a convention commonly used. It means I don't have to call out the fact that there's an earnest money provision in Section 8 or Section 6 or Section 9 or Section 14. Anything means anything, and lawyers do this because they don't want to have to parse the agreement and make sure they've caught every place where it could be interpreted in a different way. They do that kind of catch-all phrasing all the time so that they can say anything to the contrary means anything, no matter where it is, no matter how many times it's repeated, no matter what font it's in. Anything means anything. And Judge Jones ruled anything didn't. Well, I think you've made your argument clearly, and you've gone over. After we hear from the other side, if any of my colleagues have any questions, I'll add a little rebuttal time. I'm going to reserve on that. Thank you. Thank you. But you've made your argument very clearly. Good morning. Good morning, Your Honor. Pat Lundvall here on behalf of Gordon Ranch, the potential purchaser in this transaction. And I think I'm going to only reserve one minute for purposes of our cross-appeal. And what I'd like to start with is a summary of the four points that I hope to make then during my remarks. First and foremost, One Cup asked this court to go where no other court has gone. They haven't offered a single case that says a non-breaching party like Gordon Ranch, a non-breaching party, a non-defaulting party like Gordon Ranch, must forfeit its earnest money deposit. Second, to ex- It says the contract says it. Well, from this perspective, Your Honor, even if the contract were interpreted to say that, which we disagree wholeheartedly. Well, I understand your argument. But supposing you take their argument. It is clear and unambiguous, and you forfeit because the contract says you forfeit. And now we have Nevada law. That's the only thing you've got left. And then Nevada law says you first must have a breach by the party that is forfeiting the earnest money deposit. And every other court- Oh, the Nevada law would not be applicable without a breach. Correct, Your Honor. The Mason v. Behema case that he cited with approval says that liquidated damages and earnest money deposit returned then to the purchase- to the seller is only applicable in the event of a breach. It's cited to the amgur on damages. And if you look at the amgur on damages, it says you first must have a breach. You look at the restatement second on contracts- So what does that mean? What that means is that there has to be some fault. There has to be a breach. There has to be a violation. Otherwise, the language of the contract is illegal under Nevada law? Yes, Your Honor. It acts as a penalty designed only to coerce a closure or performance to close in that context. And in that circumstance, then, it is unenforceable. And so when you look at the argument that they made particularly in their report- Then you've got to make this particular clause be what? Then you have to take their interpretation of this particular clause, and you have to find it unenforceable as a penalty. Just like this Court did in In re late fees. This Court in re late fees says even under the interpretation that was being proffered by the party, if it is illegal and unenforceable, then it cannot be applied as was sought to be interpreted. So if I understand your argument, your argument is even if they win, that this is clear and unambiguous, and they get the $5 million under the contract, the contract would, giving them the $5 million, would be unenforceable here because it is what? Contrary to Nevada law as what? As unenforceable, as an unenforceable penalty. That it violates the principle provision under- How can it be an unenforceable penalty if it's less than 10%? Well, the burden of proof doesn't shift to me to demonstrate the appropriateness of this liquidated damage until you first demonstrate a breach. There has been no breach. Wine Cup's position- Oh, the 10% doesn't even come up unless there is a breach. Correct, Your Honor. So the purchase agreement contained an at-risk loss, an at-risk of loss scheme, right? Yes, Your Honor. All right. Do you contend the amendment changed that scheme? No. Did not change that scheme or is ambiguous? No, it did not change that scheme, and so too did the district court. And allow me to fully explain on this. All right, the risk of loss provision is found in paragraph 14 under the purchase agreement. It has two sentences, two sentences to that paragraph. The first sentence is plain, simple, and clear. The risk of loss and damage belongs to the seller until the close of escrow. Plain, pure, and simple. The second sentence is a subset of the first sentence. Wine Cup contends that there is somehow a modification or an amendment then to the second sentence, but it leaves clear and unadulterated- But you asked for more time, so you put up more money, right? And so why isn't it possible that because you were asking for more time, which puts them at more exposure for a casualty or something like that, and the language that was used in that saying this is it, why isn't it possible that that modified that and said now we have a new thing? You're paying more money and the risk of loss is gone. Well, to accept that argument, Your Honor, what you have to assume is that the parties did not expressly negotiate what the risk and the cost were and the value of that, but they did. In the amendment, go to the paragraph number 5 in the amendment. Paragraph 5 in the amendment could not be more clear. In the amendment, the parties expressly stated, as consideration of the risk and cost, seller will incur due to the extension of the closing. And then it goes on, and to afford, then, a opportunity, then, for the seller to sell culled cattle, which was a valuable right in and of themselves, to be able to do then during this interim period of the close of the escrow. And that was the consideration that the parties negotiated for as to the increased risk for the amount of time. That was clear. That was expressed. But you don't really explain in that explanation, which I've heard your side and I've now heard it addressed very well by both sides, the notwithstanding language that counsel comes to us with, the all language that counsel comes to us with. If, in fact, that was really what was supposed to be done, that could have been written a lot better to indicate what you're suggesting it indicates. Well, and then you go then to the pleadings, where in fact what we had alleged that they had admitted is that the language that they're referring to was offered by them. There was no negotiation on this language. The language of who it was offered to has really no substance here, unless we're going to get to the language is ambiguous and construe the language then against them. The language, if it's clear and unambiguous, is not going to change simply because of who offered it unless it's ambiguity. Then if it's ambiguous, then I'm going to construe it against them. That's why I asked them why we shouldn't go back and have the district. Your arguments are best made in an ambiguous situation because then you can produce the evidence that they produced the language, that they gave the language, this is what you intended, and then the district judge may come out the same way, but at least he would have a hearing on what is an ambiguous contract. But, Your Honor, your argument, though, suggests I don't have an argument. I'm making their argument. My apologies. What we say is the law after we say it. I wish it were my argument. I'm just trying to reflect theirs. The position that is being advocated by Winecup assumes that, in fact, it was okay to implicitly modify the risk of loss. It is implicit. It's notwithstanding any and all other provisions. All other provisions. That's not implicit. Well, when you get to their argument, though, that contends that it implicitly and was only designed to reach sentence two of the risk of loss provision, and they entirely ignore sentence number one. Sentence number one clearly and unequivocally places the risk of loss and damage on the seller. You go to the subset, and it only speaks to the risk of damage, not loss, damage caused by fire and casualty, and then it created a three-legged stool. That three-legged stool did not give them the independent right not to repair any damage that was caused in the interim by a fire or casualty. It only gave them that right if we had the two options that were set forth in the second sentence of paragraph 14. But when they kicked off one of those legs of that three-legged stool, their independent right not to repair damage collapsed. And so even in that circumstance then, which is exactly what the district court found, was the internal logic of the way that this was a negotiated right, that one right was dependent upon the other, and if the other right did not exist, i.e., if we did not have the right to be able to say too much damage, too much loss, then they did not have the right to choose not to repair the damage. But the most important thing, though, of this is that the loss is still there. So what do we do with the attorney's fees since you're running out of time? What we do with the attorney's fees is apply the plain language of the contract. Well, does the district court, though, have discretion to deny attorney's fees in this litigation, or is it required to give fees just because, I mean, you heard my argument here that, you know, both of you could have written a better contract, and here we are. And here we are here, here we were there, and then if we send it back, then we're there again. Can't the district court say, well, I don't think either of you, you know, you may be entitled to it, but I'm not going to, you know, I'm not going to give you any. That would come in. Or I'm going to give you a dollar. I'm going to give you a dollar because. So the question becomes is whether or not the court has the discretion in the liability phase to determine the interpretation, then, of this provision. Respectfully, I submit no. Does the district court in the determining as to the amount that may be awarded to afford that rough justice? Then that's a different issue. And the answer to that may be yes. So $2.00 maybe. I'm not suggesting that I only earn $2.00 in trying to advocate both this at the district court as well as before this court. But the point I'm making is this, with the de novo review, the district court is not entitled to violate, in essence, the law. The law says he was to look at the plain language of the contract language and apply that plain language. The plain language was that the amount can reflect the possible difficulty of the positions put forward and the party's response, the party's conduct that That's correct, Your Honor. Why didn't you file a Rule 54D motion? The issue concerning attorney's fees had been raised in the briefing on the dispositive motions. Why didn't you file a motion? Because the district court had already ruled. The district court had made clear in his oral statements when we were before him on the dispositive motions that this is how I'm going to rule and this is why I'm not going to afford attorney's fees, giving his interpretation of the Well, that seems obvious. I don't know how much trial work you do, but there's a lot of times the district courts make rulings in passing in their judgments in the court where you want to have this on appeal and you want to do something with it so you make the appropriate motions so that you get them in front of the court. If you don't make the motion, then you lose your right to appeal. Well, the motion requires, or the Rule 54 requires, unless there is a court order to the contrary. Right, and I didn't see any order. All I saw was record. Respectfully, Your Honor, the record reflects the order. The oral statement that he made offering that interpretation, his written ruling that he made that determination, and then the judgment by which that he said. And so from that perspective, there was a court order that said otherwise. And so then the issue becomes is did the burden fall upon me to file a motion for reconsideration or a motion to amend the judgment? And respectfully, I can't find any case law and I can't find any procedural provision that obligated me by which to do so. And secondarily, I do a lot of trial work. And many times you take into account the person you are before. And so that you have concern as to whether or not that what you have already secured somehow may be taken away and whether or not that you may offend. And so to the extent that you look at whether or not that you have an obligation by which to do so or as the district court said, if you don't like my determination on the attorney's piece, take it up on appeal, which is respectfully, Your Honor, is what we did. Well, frankly, I've seen a lot of those. I don't know Judge Jones personally. I know of him, have a relationship, but I'm having a tough time why he wouldn't ask you to do all procedurally necessary to take an appeal rather than just take an appeal. When you look at the Supreme Court and why that it has a forfeiture or waiver rule, the decisions from the Supreme Court expressly state that it is to allow the party below to offer all evidence necessary to the determination. When you have a contract that is clear and unambiguous, both sides agree it's clear and unambiguous, what additional evidence did the court have, need before it? Nothing. And so to the extent that the whole purpose underlying the forfeiture or the waiver rule does not apply in this particular circumstance, I still would like to reserve, if possible. Well, you're down to, you're actually in overtime now. So you both have gone in overtime, so unless either any of my colleagues have any questions. I don't. Thank you, Your Honor. I think you both covered all of the issues. Thank you. This matter will stand submitted. Thank you both. I think you both gave helpful argument in this matter.
judges: Callahan, N.R. Smith, Olguin